SLT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X     12-517 M

UNITED STATES OF AMERICA                C O M P L A I N T

    - against -

MITCHELL REQUENA and                    (T. 21, U.S.C., § 846)
IRWIN RAMIREZ,

              Defendants.

- - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

        FRANK DEERR, being duly sworn, deposes and states that he is a Special Agent of the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting as such.

        Upon information and belief, on or about and between April 16, 2012 and May 30, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants MITCHELL REQUENA and IRWIN RAMIREZ, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing MDMA, a Schedule I

controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(Title 21, United States Code, Section 846)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the DEA for approximately three years. During that time, I have investigated numerous cases involving the importation and distribution of illegal drugs.

2. For approximately the past four months, the DEA has been investigating a narcotics trafficking organization that distributes MDMA (commonly referred to as "ecstasy") throughout the New York area. The investigation has revealed that MITCHELL REQUENA is one of the principal leaders of this drug organization responsible for transporting and distributing tens of thousands of MDMA tablets in the Eastern District of New York and elsewhere.

3. During the course of the investigation, law enforcement agents received information about REQUENA's narcotics distribution activities from a confidential informant, whose

---

[1] Because the purpose of this Complaint is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

2

information has proven to be reliable in the past and has been corroborated by independent evidence (the "CI").

4. On or about April 16, 2012, the CI met with REQUENA in order to discuss the purchase of MDMA tablets. The meeting was surveilled by DEA agents and recorded by the CI, who was wearing a hidden audio recorder. During the course of this meeting, REQUENA agreed to supply the CI with 1,000 MDMA pills as a sample. REQUENA further stated that he would supply the CI with up to 5,000 MDMA pills during their first two deals. REQUENA further explained that once he became comfortable with the CI, REQUENA would supply the CI with up to 20,000 MDMA pills at a time.

5. On or about May 4, 2012, the CI met with REQUENA at a prearranged location in Manhattan, New York in order to purchase 1,000 MDMA pills. The meeting was recorded by the CI and surveilled by DEA agents. After REQUENA arrived at the location, he entered the CI's car and proceeded to count the money the CI had brought to purchase the MDMA. REQUENA informed the CI that he was a bit short and only had 991 pills instead of 1,000. REQUENA stated he would take $50 off the agreed-upon price of $3,500 because he brought fewer than 1,000 pills.

6. After counting the CI's money, REQUENA then escorted the CI around the block to a newspaper stand, where

REQUENA instructed the CI to enter the newspaper stand and retrieve a black plastic bag that was inside.  After the CI retrieved the bag, REQUENA and the CI walked back to the CI's car.  The CI checked the contents of the bag, and then paid REQUENA $3,450 in cash.  During the course of this meeting, REQUENA and the CI discussed additional narcotics purchases.  Specifically, REQUENA stated that he would charge the CI a lower price per pill during the next deal if the CI purchased at least 2,000 MDMA pills.

    7. Immediately following the meeting, the CI provided the black plastic bag he/she had received from REQUENA to the investigating agents.  Inside the bag was a clear zip-lock bag containing approximately 991 pills.  One side of the pills was stamped with the letter "G" and the other side was stamped with the figure of a young woman.  The pills were tested by a DEA laboratory and found to contain 3,4-Methylenedioxymethamphetamine ("MDMA").

    8. On or about May 30, 2012, the CI called REQUENA and arranged a meeting to purchase an additional 3,000 MDMA pills.  During this call, which was recorded by DEA agents, REQUENA agreed to sell the CI 3,000 MDMA pills and the two arranged to meet in the parking lot of a Pathmark supermarket in

4

Bronx, New York later that evening. At approximately 6:30 p.m., DEA agents set up surveillance in the vicinity of the arranged meeting location. A short time later, agents observed REQUENA arrive in the vicinity of the parking lot driving a black BMW 3-series sedan. Another individual, subsequently identified as IRWIN RAMIREZ, was a passenger in REQUENA's BMW.

        9. Upon arriving at the location, REQUENA exited his BMW and proceeded to walk towards the CI, who was sitting in a pickup truck in the parking lot. RAMIREZ initially remained with the BMW. REQUENA engaged the CI in a conversation and then began walking with the CI towards the Pathmark. In sum and substance, REQUENA told the CI that he was going to "order up" the pills from his "guy" for the CI's 3,000 pill order. DEA agents then observed REQUENA make a phone call on his cellular phone. While REQUENA was on the phone, the CI overheard REQUENA instruct his associate to "take it to the truck and put it inside."

        10. A short time later, DEA agents observed RAMIREZ remove a shopping bag out of the BMW. RAMIREZ carried the shopping bag to the CI's pickup truck, opened the passenger side door and placed the shopping bag inside.

        11. At this time, DEA agents approached RAMIREZ and identified themselves as law enforcement officers. As soon as the agents identified themselves, RAMIREZ immediately started

5

running out of the parking lot.  DEA agents chased after RAMIREZ and eventually apprehended him several blocks away.

12.  DEA agents recovered the shopping bag from the inside of the CI's truck.  Inside the shopping bag, agents found three vacuum-sealed plastic bags containing approximately 3,000 pills of various colors and markings.  Based on my training and experience, the pills contained in the vacuum-sealed bags are consistent with pills containing MDMA.[2]

13.  Following RAMIREZ's arrest, DEA agents then approached REQUENA, who was still in the parking lot conversing with the CI.  After the agents identified themselves as members of law enforcement, REQUENA fled the scene, but was apprehended by agents a short distance outside of the parking lot.

14.  Following his arrest, REQUENA waived his Miranda warnings and agreed to make a statement.  In sum and substance, REQUENA admitted that he engaged in two drug transactions with the CI.  Specifically, he admitted that on a prior occasion he had sold "pills" to the CI.  REQUENA further admitted that he knew the CI was looking to purchase more pills during their second meeting on May 30, 2012.  According to REQUENA, it was

---

[2] The 3,000 pills were submitted to a DEA laboratory for testing. The results of the chemical analysis are not yet available.

IRWIN RAMIREZ who brought the 3,000 pills to the deal that night and the pills contained in the shopping bag belonged to RAMIREZ.

WHEREFORE, your deponent respectfully requests that the defendants MITCHELL REQUENA and IRWIN RAMIREZ be dealt with according to law.

s/ Frank Deerr

FRANK DEERR
Special Agent
Drug Enforcement Administration

Sworn to before me this
31st day of May 2012

s/ Steven M. Gold

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7